633-07/WLJ
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
Eukor Car Carriers Inc.
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 fax

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KIA MOTORS CORPORATION, KIA
MOTORS AMERICA INC., and HYUNDAI
MARINE & FIRE INSURANCE CO. LTD.,                    **07 CIV 11063 (GBD)**

                              Plaintiffs,            **UNGER AFFIRMATION**

        -against-

ENGAGED FUTURE and EUKOR CAR
CARRIERS INC.,

                              Defendants.
-----------------------------------------------------------x

        MICHAEL E. UNGER, an attorney at law, affirms under penalty of perjury as

follows:

        1.      I am an attorney admitted to practice before this Court and am a partner of

the law firm of Freehill Hogan & Mahar, LLP, attorneys for Defendant EUKOR CAR

CARRIERS INC. ("EUKOR"). I am not a party to the action, am over 18 years of age

and reside at 80 Pine Street, New York, New York. I submit this Affirmation on behalf

of EUKOR and in support of EUKOR's motion pursuant to Rule E to compel Plaintiffs

KIA MOTORS CORPORATION, KIA MOTORS AMERICA INC., and HYUNDAI

MARINE & FIRE INSURANCE CO. LTD. (collectively, "KIA") to accept a North of

England P&I Club letter of undertaking ("Club LOU") in lieu of the security KIA has

NYDOCS1/295833.1                          1

obtained pursuant to Rule B. This Affirmation is also submitted in support of EUKOR's alternative application, also pursuant to Rule E, that the attachment be vacated as abusive.

2.      I make this Affirmation based upon my own personal knowledge.

### Factual Background

3.      Defendant ENGAGED FUTURE ("EF") is the owner of the M/V MORNING IVY. Defendant EUKOR chartered the vessel from EF and EUKOR entered into a bill of lading contract of carriage with KIA to carry KIA's vehicles from Korea to the United States. A copy of the Sea Way Bills and bill of lading are annexed hereto as Ex. A.

4.      At or about the time that the vehicles were delivered, KIA alleged that the vehicles had been damaged by exposure to seawater. KIA claims that the damage to the vehicles is in the amount of $419,062.80.[1]

5.      One of the terms and conditions of the bill of lading is that disputes of the type asserted in the instant action brought by KIA are to be resolved by litigation in Korea.

6.      Despite the contractual obligation to resolve disputes by litigation in Korea, KIA commenced this action here, seeking security from Defendants EF and EUKOR pursuant to Rule B. KIA's Verified Complaint does not state whether KIA

---

[1] Although KIA claims this amount in damages, KIA's maximum recovery, if any, can be no more than the applicable statutory limitation. If American law was to apply, KIA's maximum is limited under the Carriage of Goods by Sea Act ("COGSA") to $500 per package or customary freight unit, resulting in maximal recoverable damages of $20,000 (if each vehicle is a "package") or $280,000 (if the limitation is applied based on a freight unit basis). If Korean law is to apply on the other hand, then KIA's maximal recovery would be approximately 20,000 SDRs (equivalent to approximately $30,000 utilizing current exchange rates).

intends to resolve the dispute on the merits through this action or, alternatively, through an action yet to be filed in Korea.  I note that KIA's Verified Complaint contains no reservation of rights to seek to commence an action in Korea as per the bill of lading.

7.     KIA applied to this Court for an attachment pursuant to Rule B and this Court granted the attachment.  KIA subsequently served the writ of attachment on various garnishee banks and succeeded in restraining $419,062.80 in electronic funds transfers in which EUKOR had an interest.

8.     The restraints of EUKOR's funds have caused substantial interruptions to EUKOR's business.  EUKOR attempted to free up the cash that had been restrained by KIA by offering KIA a Club LOU in the amount of $519,062.80, which exceeds KIA's claimed damages as set forth in the Verified Complaint of $419,062.80 by $100,000.  The excess secures costs and interest as demanded by KIA even though such costs and interest are outside the scope of the attachment authorized by the Court.

### The Club LOU is Good Substitute Security

9.     Rule E(5) compels a party to accept a bond in lieu of other property restrained pursuant to Rule B, and authorizes a Court to compel a plaintiff to accept other suitable security.

10.    A Club LOU is not a bond, but the security provided by this Club LOU is substantially better than most bonds.  A bond provides security to the extent of the financial ability of the bonding company.  To the extent that the bonding company should dissolve or become bankrupt, bonds that company issues may become worthless.

11.    The North of England's Club LOU, on the other hand, is backed by the North of England P&I Club, which has an "A" interactive rating from Standard and Poor's, with combined assets of approximately $634 million dollars, and free reserves of $190 million. See North of England Finances Overview and Management Report (2007), annexed hereto as Ex. B.

12.    The North of England is also substantially reinsured. See Ex. C. The North of England is one of the thirteen members of the International Group of P&I Clubs. Together, the International Group insures approximately 90% of the world's ocean-going fleet, valued in the trillions of dollars. The International Group pools its resources and the member clubs mutually reinsure each other. Each member club carries a $7 million retention and the International Group buys reinsurance coverage at Lloyd's of London for claims between $50 million and $2.05 billion, after which costs fall back on the pool. See Ex. D. The North of England reinsures its retention as well as its share of pool contributions with AA rated Swiss Re. See Ex. C.

13.    There simply cannot be any question that the Club LOU offered to KIA is at least as good as – if not better than – a bond. Indeed, it is the standard practice in the maritime industry to accept Club LOU's in lieu of other security.

14.    The Club LOU at issue in this matter was offered to KIA's counsel on Friday December 14, 2007 in the form annexed hereto as Ex. D. KIA has rejected the Club LOU. In my discussions with counsel for KIA, I have come to learn that KIA has no concerns about the value of the Club LOU offered, its authenticity, or that the North of England is capable of offering the security set forth in the Club LOU.

**KIA's Rejection of the Club LOU is Improper**

15.     KIA's rejection of the Club LOU is contrary to the standard practice in the maritime industry which, as set forth above, expects universal acceptance of Club LOUs issued by members of the International Group, like North of England.

16.     In my discussions with KIA's counsel, I have learned that KIA is rejecting the Club LOU because KIA also wishes for EUKOR to waive certain bill of lading defenses concerning Korean law and venue.

17.     Such a basis for rejecting the Club LOU is wholly improper.  KIA is seeking to take undue advantage of the attachment of EUKOR's funds and the business interruption the attachment causes as leverage to extort unfair tactical litigation concessions or to force EUKOR to settle the matter on terms more favorable to KIA. Such use of the Rule B attachment mechanism is plainly abusive, as it seeks to wrongfully obtain far more than the simple provision of security for a claim which is afforded by Rule B.

18.     Moreover, if EUKOR was to waive these defenses, it would prejudice its position for recovery vis-à-vis the vessel's owner (Defendant EF), who EUKOR submits is likely the primarily responsible party as between the named defendants herein for any saltwater damage (if any, which is denied) to KIA's vehicles.

18.5    No prior request for this relief has been made.

**Conclusion**

19.     The Club LOU offers security that is as good as, if not better than, any bond, and also offers KIA more in terms of quantum of security than KIA could ever hope to recover in this action.  Indeed, KIA has no complaints about the security offered.

Rather, KIA is rejecting the Club LOU for the wholly improper and abusive purpose of attempting to obtain an unfair litigation advantage by requiring EUKOR to waive valid defenses arising under the bill of lading contract of carriage. This Court should either compel KIA to accept the tendered Club LOU or, alternatively, should vacate the attachment pursuant to Rule E(4)(f) as abusive.

Dated: New York, New York
      December 20, 2007

_____
Michael E. Unger

Exhibit A
Unger Affirmation

 EUKOR Car Carriers Inc.

# SEA WAYBILL

| Shipper / Exporter ( complete name and address ) | Waybill No. |
|---|---|
| KIA MOTORS CORPORATION<br>231, YANGJAE-DONG, SEOCHO-GU,<br>SEOUL, KOREA | EUKOKRBT264634W |

Received from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Cars or other packages or units indicated in the "Total No. of Cars/Packages" box received by the Carrier" for Carriage from the Place of Receipt or the Port of Loading whichever applicable, to the Port of Discharge or the Place of Delivery whichever applicable. SUBJECT TO THE TERMS OF THE CARRIER'S STANDARD BILL OF LADING TERMS AND CONDITIONS AND TARIFF FOR THE RELEVANT TRADE, WHICH ARE MUTATIS MUTAND IS APPLICABLE TO THIS WAYBILL (copies of which may be obtained from the Carrier or his agents.) Except for live animals and goods which are stated herein to be carried on deck and are so carried, these terms and conditions are warranted by the Carrier in respect of the sea portion of the Carriage to apply the Hague Rules or Hague Visby Rules, whichever would have been applicable if this Waybill were a Bill of Lading. In either case the provisions of Article III Rule 4 of the Hague Visby Rules are deemed to be incorporated herein.

The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in Article 1 (b) of the Hague Rules and Hague Visby Rules. However this Waybill is not a document of title to the Goods.

| Consignee ( complete name and address ) |
|---|
| KIA MOTORS AMERICA INC.<br>9801 MUIRLANDS BOULEVARD IRVINE,<br>CA 92618-2521, U.S.A. |

Delivery will be made to the Consignee named or his authorised agents, on production of proof of identity at the Port of Discharge or the Place of Delivery whichever applicable. Should the Consignee require delivery to a party and/or premises other than as shown above in the "Consignee" box, than written instructions must be given by the Consignee to the Carrier or his Agent. Unless the Shipper expressly waives his right to control the Goods until delivery by means of a clause on the face hereof, such instructions from the Consignee will be subject to any instruction to the contrary by the Shipper.

| Notify Party ( complete name and address ) |
|---|
| SAME AS ABOVE |

Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, the Carrier will, subject to the aforesaid terms and conditions, process cargo claims with the Consignee. Claims settlement, if any, shall be a complete discharge of the Carrier's liability to the Shipper. The Shipper accepts the said standard terms and conditions on his own behalf, on behalf of the Consignee and the Owner of the Goods, and authorizes the Consignee to bring suit against the Carrier in his own name but as agent of the Shipper, and warrants that he has authority so to accept and authorize. The Shipper further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any person other than in accordance with the terms and conditions of this Waybill.

| Place of Receipt | | | Final Destination (for the shipper's reference only) |
|---|---|---|---|
| Ocean Vessel<br>MORNING IVY | Voyage No.<br>012 | Flag | |
| Port of Loading<br>MOKPO, KOREA | Port of Discharge<br>BALTIMORE, U.S.A. | | Place of Delivery |

## PARTICULARS FURNISHED BY SHIPPER

| Marks and Numbers | No.& Kind of packages | Description of Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| KIA MOTORS AMERICA<br>BALTIMORE<br>C/NO:<br>KIA<br>MADE IN KOREA | 259 UNITS OF | KIA PASSENGER VEHICLES<br>----------------------<br>SPORTAGE       259 UNITS<br>======================<br>TOTAL         259 UNITS | 377,363KGS | 3,437.448 CBM |

NON-NEGOTIABLE

**         SELF-PROPELLED VEHICLES    **

"FREIGHT PREPAID"

| Total Number of<br>Packages or Units( in words ) | SAY : TWO HUNDRED & FIFTY NINE(259) UNITS ONLY. |
|---|---|

| | | | | Declared Value(Optional) : US$ | |
|---|---|---|---|---|---|
| Freight Charge | Revenue Tons | Rate | Per | Prepaid | Collect |

"AS ARRANGED"

| Freight Prepaid at<br>SEOUL, KOREA | Date of Issue<br>2006,JUL.13(SEOUL,KOREA) | |
|---|---|---|
| Freight Payable at | | Dated at :<br>EUKOR Car Carriers Inc. as Carrier |
| | LADEN ON BOARD is apparent good order and condition unless otherwise stated.<br><br>Date :    2006,JUL.13 | BY : |

 **EUKOR** *Car Carriers Inc*

# SEA WAYBILL

| Shipper / Exporter ( complete name and address ) | Waybill No. |
|---|---|
| KIA MOTORS CORPORATION<br>231, YANGJAE-DONG, SEOCHO-GU,<br>SEOUL, KOREA | EUKOKRBT264569W |

Received by the Carrier from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Cars or other packages or units indicated in the "Total No. of Cars/Packages" box received by the Carrier " for Carriage from the Place of Receipt or the Port of Loading whichever applicable, to the Port of Discharge or the Place of Delivery whichever applicable. SUBJECT TO THE TERMS OF THE CARRIER'S STANDARD BILL OF LADING TERMS AND CONDITIONS AND TARIFF FOR THE RELEVANT TRADE, WHICH ARE MUTATIS MUTANDIS APPLICABLE TO THIS WAYBILL (copies of which may be obtained from the Carrier or his agents.) Except for live animals and goods which are stated herein to be carrier on deck and are so carried, these terms and conditions are warranted by the Carrier in respect of the sea portion of the Carriage to apply the Hague Rules or Hague Visby Rules, whichever would have been applicable if this Waybill were a Bill of Lading. In either case the provisions of Article III Rule 4 of the Hague Visby Rules are deemed to be incorporated herein.

The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in Article 1 (b) of the Hague Rules and Hague Visby Rules. However this Waybill is not a document of title to the Goods.

| Consignee ( complete name and address ) |
|---|
| KIA MOTORS AMERICA INC.<br>9801 MUIRLANDS BOULEVARD IRVINE,<br>CA 92618-2521, U.S.A. |

Delivery will be made to the Consignee named or his authorized agents, on production of proof of identity at the Port of Discharge or the Place of Delivery whichever applicable Should the Consignee require delivery to a party and/or premises other than as shown above in the "Consignee" box, then written instructions must be given by the Consignee to the Carrier or his agent. Unless the Shipper expressly waives his right to control the Goods until delivery by means of a clause on the face hereof, such instructions from the Consignee will be subject to any instruction to the contrary by the Shipper.

| Notify Party ( complete name and address ) |
|---|
| SAME AS ABOVE |

Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, the Carrier will, subject to the aforesaid terms and conditions, process cargo claims with the Consignee. Claims settlement, if any, shall be a complete discharge of the Carrier's liability to the Shipper. The Shipper accepts the said standard terms and conditions on his own behalf, on behalf of the Consignee and the Owner of the Goods, and authorises the Consignee to bring suit against the Carrier in his own name but as agent of the Shipper, and warrants that he has authority so to accept and authorize. The Shipper further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any person other than in accordance with the terms and condition of this Waybill.

| Place of Receipt | | | |
|---|---|---|---|
| Ocean Vessel | Voyage No. | Flag | Final Destination (for the shipper's reference only) |
| MORNING IVY | 012 | | |
| Port of Loading | Port of Discharge | | Place of Delivery |
| PYUNGTAEK, KOREA | BALTIMORE, U.S.A. | | |

## PARTICULARS FURNISHED BY SHIPPER

| Marks and Numbers | No.& Kind of packages | Description of Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| KIA MOTORS AMERICA<br>BALTIMORE<br>C/NO:<br>KIA<br>MADE IN KOREA | 540 UNITS OF | KIA PASSENGER VEHICLES<br>------------------------<br>OPTIMA 4CYL.    2 UNITS<br>RIO (4DOOR)    23 UNITS<br>SEDONA    163 UNITS<br>SORENTO    352 UNITS<br>========================<br>TOTAL    540 UNITS | 1,051,050 KGS | 8,423.598 CBM |

**       \*\* SELF-PROPELLED VEHICLES \*\***

**"FREIGHT PREPAID"**

Total Number of<br>Packages or Units( in words )    SAY : FIVE HUNDRED & FORTY (540) UNITS ONLY.

| | | | | Declared Value(Optional) : US$ | |
|---|---|---|---|---|---|
| Freight Charge | Revenue Tons | Rate | Per | Prepaid | Collect |

**"AS ARRANGED"**

| Freight Prepaid at | Date of Issue | |
|---|---|---|
| SEOUL, KOREA | 2006, JUL.16 (SEOUL, KOREA) | Dated at : |
| Freight Payable at | LADEN ON BOARD in apparent<br>good order and condition unless<br>otherwise stated. | EUKOR Car Carriers Inc. as Carrier |
| | Date :     2006, JUL.16 | BY: |

NON NEGOTIABLE

 EUKOR Car Carriers Inc

# SEA WAYBILL

| Shipper / Exporter ( complete name and address ) | Waybill No. |
|---|---|
| KIA MOTORS CORPORATION<br>231, YANGJAE-DONG, SEOCHO-GU,<br>SEOUL, KOREA | **EUKOKRBT264572W** |

Received from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Crrs or other packages or units indicated in the "Total No. of Cars/Packages" box received by the Carrier " for Carriage from the Place of Receipt or the Port of Loading whichever applicable, to the Port of Discharge or the Place of Delivery whichever applicable, SUBJECT TO THE TERMS OF THE CARRIER'S STANDARD BILL OF LADING TERMS AND CONDITIONS AND TARIFF FOR THE RELEVANT TRADE, WHICH ARE MUTATIS MUTAND IS APPLICABLE TO THIS WAYBILL (copies of which may be obtained from the Carrier or his agents.) Except for live animals and goods which are stated herein to be carried on deck and are so carried, these terms and conditions are warranted by the Carrier in respect of the sea portion of the Carriage to apply the Hague Rules or Hague Visby Rules, whichever would have been applicable if this Waybill were a Bill of Lading. In either case the provisions of Article III Rule 4 of the Hague Visby Rules are deemed to be incorporated herein.

| Consignee ( complete name and address ) |
|---|
| HYUNDAI MOTOR AMERICA<br>10550 TALBERT AVENUE,P.O.BOX<br>20850 FOUNTAIN VALLEY, CA<br>92728-0850 U.S.A. |

The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in Article I (b) of the Hague Rules and Hague Visby Rules. However this Waybill is not a document of title to the Goods.

Delivery will be made to the Consignee named or his authorized agents, on production of proof of identity at the Port of Discharge or the Place of Delivery whichever applicable. Should the Consignee require delivery to a party and/or premises other than as shown above in the "Consignee" box, then written instructions must be given by the Consignee to the Carrier or his agent. Unless the Shipper expressly waives his right to control the Goods until delivery by means of a clause on the face hereof, such instructions from the Consignee will be subject to any instruction to the contrary by the Shipper.

| Notify Party ( complete name and address ) |
|---|
| HYUNDAI MOTOR AMERICA<br>10550 TALBERT AVENUE,P.O.BOX<br>20850 FOUNTAIN VALLEY, CA<br>92728-0850 U.S.A. |

Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, the Carrier will, subject to the aforesaid terms and conditions, process cargo claims with the Consignee, Claims settlement, if any, shall be a complete discharge of the Carrier's liability to the Shipper. The Shipper accepts the said standard terms and conditions on his own behalf, on behalf of the Consignee and the Owner of the Goods, and authorizes the Consignee to bring suit against the Carrier in his own name but in agent of the Shipper, and warrants that he has authority so to accept and authorize. The Shipper further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any person other than in accordance with the terms and conditions of this Waybill.

| Place of Receipt | | | Final Destination (for the shipper's reference only) |
|---|---|---|---|

| Ocean Vessel | Voyage No. | Flag | |
|---|---|---|---|
| MORNING IVY | 012 | | |

| Port of Loading | Port of Discharge | Place of Delivery |
|---|---|---|
| PYUNGTAEK, KOREA | BALTIMORE, U.S.A. | |

### PARTICULARS FURNISHED BY SHIPPER

| Marks and Numbers | No.& Kind of packages | Description of Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| HYUNDAI MOTOR AMERICA<br>BALTIMORE<br>C/NO:<br>KIA<br>MADE IN KOREA | 99 UNITS OF | HYUNDAI PASSENGER VEHICLES<br>---------------------------<br>ENTOURAGE         99 UNITS<br>=========================<br>TOTAL            99 UNITS | 207,900KGS | 1,801.998 CBM |

**NON-NEGOTIABLE**

** SELF-PROPELLED VEHICLES **

"FREIGHT PREPAID"

| Total Number of<br>Packages or Units in words ) | SAY : NINETY NINE(99) UNITS ONLY. |
|---|---|

| | | | | Declared Value(Optional) : US$ | |
|---|---|---|---|---|---|
| Freight Charge | Revenue Tons | Rate | Per | Prepaid | Collect |

"AS ARRANGED"

| Freight Prepaid at | Date of Issue | |
|---|---|---|
| SEOUL,KOREA | 2006,JUL.16 (SEOUL,KOREA) | Dated at : |
| Freight Payable at | | EUKOR Car Carriers Inc as Carrier |
| | LADEN ON BOARD in apparent<br>good order and condition unless<br>otherwise stated. | |
| | Date : **2006,JUL.16** | BY : |



EUKOR Car Carriers Inc

# SEA WAYBILL

| Shipper / Exporter ( complete name and address ) | Waybill No. |
|---|---|
| KIA MOTORS CORPORATION<br>231, YANGJAE-DONG, SEOCHO-GU,<br>SEOUL, KOREA | EUKOKRUS264632W |

Received by the Carrier from the Shipper in apparent good order and condition unless otherwise noted herein the total number or quantity of Cars or other packages or units indicated in the "Total No. of Cars/Packages" box received by the Carrier" for Carriage from the Place of Receipt or the Port of Loading whichever applicable, to the Port of Discharge or the Place of Delivery whichever applicable. SUBJECT TO THE TERMS OF THE CARRIER'S STANDARD BILL OF LADING TERMS AND CONDITIONS AND TARIFF FOR THE RELEVANT TRADE, WHICH ARE MUTATIS MUTANDIS APPLICABLE TO THIS WAYBILL, (copies of which may be obtained from the Carrier or his agent.) Except for live animals and goods which are stated herein to be carried on deck and are so carried, these terms and conditions are warranted by the Carrier in respect of the sea portion of the Carriage to apply the Hague Rules or Hague Visby Rules, whichever would have been applicable if this Waybill were a Bill of Lading. In either case the provisions of Article III Rule 4 of the Hague Visby Rules are deemed to be incorporated herein.

**Consignee ( complete name and address )**
KIA MOTORS AMERICA INC.
9801 MUIRLANDS BOULEVARD IRVINE,
CA 92618-2521, U.S.A.

The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in Article 1 (b) of the Hague Rules and Hague Visby Rules. However this Waybill is not a document of title to the Goods.

Delivery will be made to the Consignee named or his authorized agents, on production of proof of identity at the Port of Discharge or the Place of Delivery whichever applicable. Should the Consignee require delivery to a party and/or premises other than as shown above in the "Consignee" box, then written instructions must be given by the Consignee to the Carrier or his agent. Unless the Shipper expressly waives his right to control the Goods until delivery by means of a clause on the face hereof, such instructions from the Consignee will be subject to any instruction to the contrary by the Shipper.

**Notify Party ( complete name and address )**
SAME AS ABOVE

Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, the Carrier will, subject to the aforesaid terms and conditions, process cargo claims with the Consignee. Claims settlement, if any, shall be a complete discharge of the Carrier's liability to the Shipper. The Shipper accepts the said standard terms and conditions on his own behalf, on behalf of the Consignee and the Owner of the Goods, and authorizes the Consignee to bring suit against the Carrier in his own name but as agent of the Shipper, and warrants that he has authority so to accept and authorize. The Shipper further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any person other than in accordance with the terms and conditions of this Waybill.

**Place of Receipt**

| Ocean Vessel | Voyage No. | Flag | Final Destination (for the shipper's reference only) |
|---|---|---|---|
| MORNING IVY | 012 | | |

| Port of Loading | Port of Discharge | Place of Delivery |
|---|---|---|
| MOKPO, KOREA | BRUNSWICK, U.S.A. | |

## PARTICULARS FURNISHED BY SHIPPER

| Marks and Numbers | No. & Kind of packages | Description of Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| KIA MOTORS AMERICA<br>BRUNSWICK<br>C/NO:<br>KIA<br>MADE IN KOREA | 582 UNITS OF | KIA PASSENGER VEHICLES<br>-------------------------<br>SPORTAGE        582 UNITS<br>=========================<br>TOTAL           582 UNITS | 847,974KGS | 7,724.304 CBM |

NON-NEGOTIABLE

**  SELF-PROPELLED VEHICLES  **

"FREIGHT PREPAID"

**Total Number of Packages or Units in words**
SAY : FIVE HUNDRED & EIGHTY TWO(582) UNITS ONLY.

Declared Value(Optional) : US$

| Freight Charge | Revenue Tons | Rate | Per | Prepaid | Collect |
|---|---|---|---|---|---|

"AS ARRANGED"

| Freight Prepaid at | Date of Issue | |
|---|---|---|
| SEOUL, KOREA | 2006,JUL.13 (SEOUL,KOREA) | Dated at : |
| Freight Payable at | | EUKOR Car Carriers Inc. as Carrier |
| | LADEN ON BOARD in apparent good order and condition unless otherwise stated. | |
| | Date : 2006,JUL.13 | BY : |

 **EUKOR Car Carriers Inc**

# SEA WAYBILL

| | |
|---|---|
| **Shipper / Exporter ( complete name and address )**<br>KIA MOTORS CORPORATION<br>231, YANGJAE-DONG, SEOCHO-GU,<br>SEOUL, KOREA | **Waybill No.**<br>EUKOKRUS264567W |

Received by the Carrier from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Cars or other packages or units indicated in the "Total No. of Cars/Packages" box received by the Carrier " the Carriage from the Place of Receipt or the Port of Loading whichever applicable, to the Port of Discharge or the Place of Delivery whichever applicable. SUBJECT TO THE TERMS OF THE CARRIER'S STANDARD BILL OF LADING TERMS AND CONDITIONS AND TARIFF FOR THE RELEVANT TRADE, WHICH ARE MUTATIS MUTANDIS APPLICABLE TO THIS WAYBILL (copies of which may be obtained from the Carrier or his agents) Except for live animals and goods which are stated herein to be carrier on deck and so carried, these terms and conditions are warranted by the Carrier in respect of the sea portion of the Carriage to apply the Hague Rules or Hague Visby Rules, whichever would have been applicable if this Waybill were a Bill of Lading. In either case the provisions of Article III Rule 4 of the Hague Visby Rules are deemed to be incorporated herein.

| |
|---|
| **Consignee ( complete name and address )**<br>KIA MOTORS AMERICA INC.<br>9801 MUIRLANDS BOULEVARD IRVINE,<br>CA 92618-2521, U.S.A. |

The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in Article 1 (b) of the Hague Rules and Hague Visby Rules. However this Waybill is not a document of title to the Goods.

Delivery will be made to the Consignee named or his authorized agents, on production of proof of identity at the Port of Discharge or the Place of Delivery whichever applicable. Should the Consignee require delivery to a party and/or premises other than as shown above in the "Consignee" box, then written instructions must be given by the Consignee to the Carrier or his agent. Unless the Shipper expressly waives his right to control the Goods until delivery by means of a clause on the face hereof, such instructions from the Consignee will be subject to any instruction to the contrary by the Shipper.

| |
|---|
| **Notify Party ( complete name and address )**<br>SAME AS ABOVE |

Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, the Carrier will, subject to the aforesaid terms and conditions, process cargo claims with the Consignee. Claims settlement, if any, shall be a complete discharge of the Carrier's liability to the Shipper. The Shipper accepts the said standard terms and conditions on his own behalf, on behalf of the Consignee and the Owner of the Goods, and authorizes the Consignee to bring suit against the Carrier in his own name but as agent of the Shipper, and warrants that he has authority so to accept and authorize. The Shipper further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any person other than in accordance with the terms and conditions of this Waybill.

| Place of Receipt | | | |
|---|---|---|---|
| **Ocean Vessel**<br>MORNING IVY | **Voyage No.**<br>012 | **Flag** | **Final Destination (for the shipper's reference only)** |
| **Port of Loading**<br>PYUNGTAEK, KOREA | **Port of Discharge**<br>BRUNSWICK, U.S.A. | | **Place of Delivery** |

**PARTICULARS FURNISHED BY SHIPPER**

| Marks and Numbers | No. & Kind of packages | Description of Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| KIA MOTORS AMERICA<br>BRUNSWICK<br>C/NO:<br>KIA<br>MADE IN KOREA | 1363 UNITS OF | KIA PASSENGER VEHICLES<br>----------------------<br>SORENTO     499 UNITS<br>OPTIMA 4CYL  13 UNITS<br>RIO (4 DOOR)  69 UNITS<br>SEDONA     393 UNITS<br>SPECTRA (4 DOOR) 389 UNITS<br>========================<br>TOTAL     1363 UNITS | 2,360,632 KGS | 19,858.176 CBM |

**NON-NEGOTIABLE**

** SELF-PROPELLED VEHICLES **

"FREIGHT PREPAID"

| | |
|---|---|
| **Total Number of Packages or Units in words )** | SAY : ONE THOUSAND THREE HUNDRED & SIXTY THREE (1,363) |

| | | | | Declared Value(Optional) : US$ | |
|---|---|---|---|---|---|
| **Freight Charge** | **Revenue Tons** | **Rate** | **Per** | **Prepaid** | **Collect** |

"AS ARRANGED"

| Freight Prepaid at<br>SEOUL, KOREA | Date of Issue<br>2006, JUL. 16 (SEOUL, KOREA) | Dated at : | |
|---|---|---|---|
| Freight Payable at | LADEN ON BOARD in apparent good order and condition unless otherwise stated.<br>Date : 2006, JUL. 16 | EUKOR Car Carriers Inc. as Carrier<br><br>BY : | |

 **EUKOR Car Carriers Inc**

# SEA WAYBILL

| Shipper / Exporter ( complete name and address ) | Waybill No. |
|---|---|
| KIA MOTORS CORPORATION<br>231, YANGJAE-DONG, SEOCHO-GU,<br>SEOUL, KOREA | EUKOKRUS264570W |

Received by the Carrier from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Cars or other packages or units indicated in the "Total No. of Cars/Packages" box received for Carriage from the Place of Receipt or the Port of Loading whichever applicable, to the Port of Discharge or the Place of Delivery whichever applicable. SUBJECT TO THE TERMS OF THE CARRIER'S STANDARD BILL OF LADING TERMS AND CONDITIONS AND TARIFF FOR THE RELEVANT TRADE, WHICH ARE MUTATIS MUTAND IS APPLICABLE TO THIS WAYBILL (copies of which may be obtained from the Carrier or his agents.) Except for live animals and goods which are stated herein to be carried on deck and are so carried, these terms and conditions are warranted by the Carrier in respect of the sea portion of the Carriage to apply the Hague Rules or Hague Visby Rules, whichever would have been applicable if this Waybill were a Bill of Lading. In either case the provisions of Article III Rule 4 of the Hague Visby Rules are deemed to be incorporated herein.

The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in Article 1 (b) of the Hague Rules and Hague Visby Rules. However this Waybill is not a document of title to the Goods.

| Consignee ( complete name and address ) |
|---|
| HYUNDAI MOTOR AMERICA<br>10550 TALBERT AVENUE,P.O.BOX<br>20850 FOUNTAIN VALLEY, CA<br>92728-0850 U.S.A. |

Delivery will be made to the Consignee named or his authorized agents, on production of proof of identity at the Port of Discharge or the Place of Delivery whichever applicable. Should the Consignee require delivery to a party and/or premises other than as shown above in the "Consignee" box, then written instructions must be given by the Consignee to the Carrier or his agent. Unless the Shipper expressly waives his right to control the Goods until delivery by means of a clause on the face hereof, such instructions from the Consignee will be subject to any instruction to the contrary by the Shipper.

| Notify Party ( complete name and address ) |
|---|
| HYUNDAI MOTOR AMERICA<br>10550 TALBERT AVENUE,P.O.BOX<br>20850 FOUNTAIN VALLEY, CA<br>92728-0850 U.S.A. |

Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, the Carrier will, subject to the aforesaid terms and conditions, process cargo claims with the Consignee. Claims settlement, if any, shall be a complete discharge of the Carrier's liability to the Shipper. The Shipper accepts the said standard terms and conditions on his own behalf, on behalf of the Consignee and the Owner of the Goods, and authorizes the Consignee to being sub against the Carrier in his own name but as agent of the Shipper, and warrants that he has authority so to accept and authorize. The Shipper further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any person other than in accordance with the terms and conditions of this Waybill.

| Place of Receipt | | | | Final Destination (for the shipper's reference only) |
|---|---|---|---|---|
| Ocean Vessel<br>MORNING IVY | Voyage No.<br>012 | Flag | | |
| Port of Loading<br>PYUNGTAEK, KOREA | Port of Discharge<br>BRUNSWICK, U.S.A. | | Place of Delivery | |

## PARTICULARS FURNISHED BY SHIPPER

| Marks and Numbers | No.& Kind of packages | Description of Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| | | | 596,400KGS | 5,169.368 CBM |
| HYUNDAI MOTOR AMERICA<br>BRUNSWICK<br>C/NO:<br>KIA<br>MADE IN KOREA | 284 UNITS OF | HYUNDAI PASSENGER VEHICLES<br>--------------------------<br>ENTOURAGE      284 UNITS<br>==========================<br>TOTAL         284 UNITS | | |

NON-NEGOTIABLE

** SELF-PROPELLED VEHICLES **

"FREIGHT PREPAID"

| Total Number of Packages or Units( in words ) | SAY : TWO HUNDRED & EIGHTY FOUR (284) UNITS ONLY. |
|---|---|

| | | | | Declared Value(Optional) : UNS | |
|---|---|---|---|---|---|
| Freight Charge | Revenue Tons | Rate | Per | Prepaid | Collect |

"AS ARRANGED"

| Freight Prepaid at<br>SEOUL,KOREA | Date of Issue<br>2006,JUL.16 (SEOUL,KOREA) | Dated at : |
|---|---|---|
| Freight Payable at | LADEN ON BOARD in apparent good order and condition unless otherwise stated.<br>Date : 2006,JUL.16 | EUKOR Car Carriers Inc. as Carrier<br><br>BY : |

 EUKOR Car Carriers Inc

# SEA WAYBILL

| Shipper / Exporter ( complete name and address ) | Waybill No. |
|---|---|
| KIA MOTORS CORPORATION<br>231, YANGJAE-DONG, SEOCHO-GU,<br>SEOUL, KOREA | EUKOKRUS264633W |

Received by the Carrier from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Cars or other packages or units indicated in the "Total No. of Cars/Packages" box received by the Carrier" for Carriage from the Place of Receipt or the Port of Loading whichever applicable, to the Port of Discharge or the Place of Delivery whichever applicable, SUBJECT TO THE TERMS OF THE CARRIERS STANDARD BILL OF LADING TERMS AND CONDITIONS AND TARIFF FOR THE RELEVANT TRADE, WHICH ARE MUTATIS MUTANDIS APPLICABLE TO THIS WAYBILL (copies of which may be obtained from the Carrier or his agents).Except for live animals and goods which are stated herein to be carried on deck and are so carried, these terms and conditions are warranted by the Carrier in respect of the sea portion of the Carriage to apply the Hague Rules or Hague Visby Rules, whichever would have been applicable if this Waybill were a Bill of Lading. In either case the provisions of Article III Rule 4 of the Hague Visby Rules are deemed to be incorporated herein.

The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in Article I (b) of the Hague Rules and Hague Visby Rules. However this Waybill is not a document of title to the Goods.

Delivery will be made to the Consignee named or his authorized agents, on production of proof of identity at the Port of Discharge or the Place of Delivery whichever applicable. Should the Consignee require delivery to a party and/or premises other than as shown above in the "Consignee" box, than written instructions must be given by the Consignee to the Carrier or his agent. Unless the Shipper expressly waives his right to control the Goods until delivery by means of a clause on the face hereof, such instructions from the Consignee will be subject to any instruction to the contrary from the Shipper.

Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, the Carrier will, subject to the aforesaid terms and conditions, process cargo claims with the Consignee. Claims settlement, if any, shall be a complete discharge of the Carrier's liability to the Shipper. The Shipper accepts the said standard terms and conditions on his own behalf, on behalf of the Consignee and the Owner of the Goods, and authorizes the Consignee to bring suit against the Carrier in his own name but as agent of the Shipper, and warrants that he has authority so to accept and authorize. The Shipper further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any person other than in accordance with the terms and conditions of this Waybill.

| Consignee ( complete name and address ) |
|---|
| KIA MOTORS AMERICA INC.<br>9801 MUIRLANDS BOULEVARD IRVINE,<br>CA 92618-2521, U.S.A. |

| Notify Party ( complete name and address ) |
|---|
| SAME AS ABOVE |

Place of Receipt

| Ocean Vessel | Voyage No. | Flag | Final Destination (for the shipper's reference only) |
|---|---|---|---|
| MORNING IVY | 012 | | |

| Port of Loading | Port of Discharge | Place of Delivery |
|---|---|---|
| MOKPO, KOREA | NEWARK, U.S.A. | |

## PARTICULARS FURNISHED BY SHIPPER

| Marks and Numbers | No.& Kind of packages | Description of Goods. | Gross Weight | Measurement |
|---|---|---|---|---|
| KIA MOTORS AMERICA<br>NEWARK<br>C/NO:<br>KIA<br>MADE IN KOREA | 207 UNITS OF | KIA PASSENGER VEHICLES<br>-------------------------<br>SPORTAGE        207 UNITS<br>=====================<br>TOTAL           207 UNITS | 301,599KGS | 2,747.304 CBM |

NON-NEGOTIABLE

**       SELF-PROPELLED VEHICLES       **

"FREIGHT PREPAID"

Total Number of Packages or Units( in words )     SAY : TWO HUNDRED & SEVEN(207) UNITS ONLY.

| | | | | Declared Value(Optional) - US$ | |
|---|---|---|---|---|---|
| Freight Charge | Revenue Tons | Rate | Per | Prepaid | Collect |

"AS ARRANGED"

| Freight Prepaid at | Date of Issue | |
|---|---|---|
| SEOUL, KOREA | 2006, JUL.13 (SEOUL, KOREA) | Dated at : |
| Freight Payable at | LADEN ON BOARD in apparent good order and condition unless otherwise stated. | EUKOR Car Carriers Inc. as Carrier |
| | Date :     2006, JUL.13 | BY : |

 **EUKOR Car Carriers Inc**

# SEA WAYBILL

| Shipper / Exporter ( complete name and address ) | Waybill No. |
|---|---|
| KIA MOTORS CORPORATION<br>231, YANGJAE-DONG, SEOCHO-GU,<br>SEOUL, KOREA | EUKOKRUS264568W |

Received by the Carrier from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Cars or other packages or units indicated in the "Total No. of Cars/Packages" box received by the Carrier" for Carriage from the Place of Receipt or the Port of Loading whichever applicable, to the Port of Discharge or the Place of Delivery whichever applicable, SUBJECT TO THE TERMS OF THE CARRIER'S STANDARD BILL OF LADING TERMS AND CONDITIONS AND TARIFF FOR THE RELEVANT TRADE, WHICH ARE MUTATIS MUTANDI IS APPLICABLE TO THIS WAYBILL (copies of which may be obtained from the Carrier or his agents.) Except for live animals and goods which are stated herein to be carrier on deck and are so carried, these terms and conditions are surrended by the Carrier in respect of the sea portion of the Carriage to apply the Hague Rules or Hague Visby Rules, whichever would have been applicable if this Waybill were a Bill of Lading. In either case the provisions of Article III Rule 4 of the Hague Visby Rules are deemed to be incorporated herein.

The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in Article 1 (b) of the Hague Rules and Hague Visby Rules. However this Waybill is not a document of title to the Goods.

Delivery will be made to the Consignee named or his authorized agents, on production of proof of identity at the Port of Discharge or the Place of Delivery whichever applicable. Should the Consignee require delivery to a party and/or premises other than as shown above in the "Consignee" box, than written instructions must be given by the Consignee to the Carrier or his agent. Unless the Shipper expressly waives his right to control the Goods until delivery by means of a clause on the face hereof, such instructions from the Consignee will be subject to any instruction to the contrary by the Shipper.

Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, the Carrier will, subject to the aforesaid terms and conditions, process cargo claims with the Consignee. Claims settlement, if any, shall be a complete discharge of the Carrier's liability to the Shipper. The Shipper accepts the said standard terms and conditions on his own behalf, on behalf of the Consignee and the Owner of the Goods, and authorizes the Consignee to bring suit against the Carrier in his own name but as agent of the Shipper, and warrants that he has authority so to accept and authorize. The Shipper further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any person other than in accordance with the terms and conditions of this Waybill.

| Consignee ( complete name and address ) | |
|---|---|
| KIA MOTORS AMERICA INC.<br>9801 MUIRLANDS BOULEVARD IRVINE,<br>CA 92618-2521, U.S.A. | |

| Notify Party ( complete name and address ) | |
|---|---|
| SAME AS ABOVE | |

| Place of Receipt | |
|---|---|

| Ocean Vessel | Voyage No. | Flag | Final Destination (for the shipper's reference only) |
|---|---|---|---|
| MORNING IVY | 012 | | |

| Port of Loading | Port of Discharge | Place of Delivery |
|---|---|---|
| PYINGTAEK, KOREA | NEWARK, U.S.A. | |

**PARTICULARS FURNISHED BY SHIPPER**

| Marks and Numbers | No.& Kind of packages | Description of Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| | | | 355,270KGS | 2,772.624 CBM |
| KIA MOTORS AMERICA<br>NEWARK<br>C/NO:<br>KIA<br>MADE IN KOREA | 183 UNITS OF | KIA PASSENGER VEHICLES<br>------------------------<br>RIO (4DOOR)     3 UNITS<br>SORENTO       154 UNITS<br>SEDONA        26 UNITS<br>------------------------<br>TOTAL         183 UNITS | | |

NON-NEGOTIABLE

```
**  SELF-PROPELLED VEHICLES  **


          "FREIGHT PREPAID"
```

| Total Number of Packages or Units in words | |
|---|---|
| SAY : ONE HUNDRED & EIGHTY THREE(183) UNITS ONLY. | |

| | Declared Value(Optional) - US$ |
|---|---|

| Freight Charge | Revenue Tons | Rate | Per | Prepaid | Collect |
|---|---|---|---|---|---|
| | | | | | |

"AS ARRANGED"

| Freight Prepaid at | Date of Issue | |
|---|---|---|
| SEOUL,KOREA | 2006,JUL.16 (SEOUL,KOREA) | Dated at : |
| Freight Payable at | LADEN ON BOARD in apparent good order and condition unless otherwise stated. | EUKOR Car Carriers Inc. as Carrier |
| | Date : 2006,JUL.16 | BY : |

 EUKOR Car Carriers In

# SEA WAYBILL

| | |
|---|---|
| **Shipper / Exporter** ( complete name and address )<br>KIA MOTORS CORPORATION<br>231, YANGJAE-DONG, SEOCHO-GU,<br>SEOUL, KOREA | **Waybill No.**<br>EUKOKRUS264571W |

Received by the Carrier from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Cars or other packages or units indicated in the "Total No. of Cars/Packages" box received by the Carrier " for Carriage from the Place of Receipt or the Port of Loading whichever applicable, to the Port of Discharge or the Place of Delivery whichever applicable. SUBJECT TO THE TERMS OF THE CARRIER'S STANDARD BILL OF LADING TERMS AND CONDITIONS AND TARIFF FOR THE RELEVANT TRADE, WHICH ARE MUTATIS MUTANDIS APPLICABLE TO THIS WAYBILL (copies of which may be obtained from the Carrier or his agents.) Except for live animals and goods which are stated herein to be carrier on deck and so carried, these terms and conditions are warranted by the Carrier in respect of the sea portion of the Carriage to apply the Hague Rules or Hague Visby Rules, whichever would have been applicable if this Waybill were a Bill of Lading. In either case the provisions of Article III Rule 4 of the Hague Visby Rules are deemed to be incorporated herein.

The contract evidenced by this Waybill is deemed to be a contract of carriage as defined in Article 1 (b) of the Hague Rules and Hague Visby Rules. However this Waybill is not a document of title to the Goods.

**Consignee** ( complete name and address )
HYUNDAI MOTOR AMERICA
10550 TALBERT AVENUE,P.O.BOX
20850 FOUNTAIN VALLEY, CA
92728-0850 U.S.A.

Delivery will be made to the Consignee named or his authorized agents, on production of proof of identity at the Port of Discharge or the Place of Delivery whichever applicable. Should the Consignee require delivery to a party and/or premises other than as shown above in the "Consignee" box, then written instructions must be given by the Consignee to the Carrier or his agent. Unless the Shipper expressly waives his right to control the Goods until delivery by means of a clause on the face hereof, such instructions from the Consignee will be subject to any instruction to the contrary by the Shipper.

**Notify Party** ( complete name and address )
HYUNDAI MOTOR AMERICA
10550 TALBERT AVENUE,P.O.BOX
20850 FOUNTAIN VALLEY, CA
92728-0850 U.S.A.

Unless instructed to the contrary by the Shipper prior to the commencement of Carriage and noted accordingly on the face hereof, the Carrier will, subject to the aforesaid terms and conditions, process cargo claims with the Consignee. Claims settlement, if any, shall be a complete discharge of the Carrier's liability to the Shipper. The Shipper accepts the said standard terms and conditions on his own behalf, on behalf of the Consignee and the Owner of the Goods, and authorizes the Consignee to bring suit against the Carrier in his own name but as agent of the Shipper, and warrants that he has authority so to accept and authorize. The Shipper further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any person other than in accordance with the terms and conditions of this Waybill.

| Place of Receipt | | | |
|---|---|---|---|

| Ocean Vessel<br>MORNING IVY | Voyage No.<br>012 | Flag | Final Destination (for the shipper's reference only) |
|---|---|---|---|
| Port of Loading<br>PYUNGTAEK, KOREA | Port of Discharge<br>NEWARK, U.S.A. | | Place of Delivery |

## PARTICULARS FURNISHED BY SHIPPER

| Marks and Numbers | No.& Kind of packages | Description of Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| HYUNDAI MOTOR AMERICA<br>NEWARK<br>C/NO:<br>KIA<br>MADE IN KOREA | 80 UNITS OF | HYUNDAI PASSENGER VEHICLES<br>------------------------<br>ENTOURAGE        80 UNITS<br>=================<br>TOTAL            80 UNITS | 168,000KGS | 1,456.160 CBM |

## NON-NEGOTIABLE

**       SELF-PROPELLED VEHICLES    **

"FREIGHT PREPAID"

| Total Number of<br>Packages or Units( in words )<br>SAY : EIGHTY(80) UNITS ONLY. | |
|---|---|

| | | | | Declared Value(Optional) : US$ | |
|---|---|---|---|---|---|
| Freight Charge | Revenue Tons | Rate | Per | Prepaid | Collect |

"AS ARRANGED"

| Freight Prepaid at<br>SEOUL,KOREA | Date of Issue<br>2006,JUL.16 (SEOUL,KOREA) | Dated at : |
|---|---|---|
| Freight Payable at | LADEN ON BOARD in apparent<br>good order and condition unless<br>otherwise stated.<br><br>Date:    2006,JUL.16 | EUKOR Car Carriers Inc. as Carrier<br><br>BY : |

 *EUKOR Car Carriers Inc.*

# BULK BILL OF LADING



IN ACCEPTANCE THIS BILL OF LADING, the shipper, owner and consignee of the goods, and the holder of this Bill of Lading expressly accept and agree to all its stipulations and conditions, whether written, stamped or printed, as fully as if signed by such shipper, owner, consignee and / or holder. No agent is authorized to waive any of the provisions of the within clauses.

RECEIVED FROM THE SHIPPER HEREIN NAMED THE GOODS OR PACKAGES IN APPARENT GOOD ORDER AND CONDITION UNLESS OTHERWISE INDICATED IN THIS BILL OF LADING.
THE TERM 'APPARENT GOOD ORDER AND CONDITIONS' WHEN USED IN THIS BILL OF LADING WITH REFERENCE TO IRON, STEEL, METAL PRODUCTS OR WOOD PRODUCTS DOES NOT MEAN THAT THE GOODS, WHEN RECEIVED, WERE FREE OF VISIBLE RUST, MOISTURE, STAINING, CHAFFING OR BREAKAGE. IF THE SHIPPER SO REQUESTS, A SUBSTITUTE BILL OF LADING WILL BE ISSUED OMITTING THE ABOVE DEFINITION AND SETTING FORTH ANY NOTATIONS AS TO RUST: MOISTURE, STAINING, CHAFFING OR BREAKAGE WHICH MAY APPEAR ON THE MATE'S RECEIPTS OR TALLY CLERK'S RECEIPTS.

IN WITNESS WHEREOF, the Master or agent of the said ship has signed the number of original Bill(s) of Lading stated below, all of this tenor and date, ONE of which being accomplished, the others to st and void.

## [PACKAGE LIMITATION CLAUSE]

Section 4.(5) of U.S. Carriage of Goods by Sea Act-1936: Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding **$500** per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature of such goods have been declared by the shipper before shipment and inserted in the Bill of Lading and additional freight has been paid as required. This declaration, if embodied in the Bill of Lading, shall be prima facie evidence, but shall not be conclusive on the carrier. THIS CLAUSE SHALL APPLY ONLY TO GOODS MOVING TO OR FROM PORTS OF UNITED STATES.

## [ON DECK CARGO CLAUSE]

General cargo and/or container cargo is carried on deck on a general cargo vessel at shipper's risk and liability for loss or damage whatsoever caused. This clause shall be without prejudice to the clause paramount.

LADEN ON BOARD in apparent good order and condition unless otherwise stated.

 **EUKOR Car Carriers Inc.**

*EUKOR Bill of Lading*

□□ □□

Received by the Carrier from the Merchant in apparent good order and condition unless otherwise indicated, the Goods to be carried subject to all the terms on the face and back of this Bill of Lading, from the port of loading to the port of discharge or place of delivery, there to be delivered. If required by the Carrier, this Bill of Lading duly endorsed must be surrendered in exchange for the Goods or delivery order.

## 1. DEFINITIONS

When used in this Bill of Lading:

(A) *"Carrier" means EUKOR Car Carriers Inc., vessels used in the carriage, their owners, and operators.* It is further understood and agreed that as the line company or agent who has executed the Bill of Lading shall not be under any responsibility arising out of the contract of carriage, nor as carrier nor bailee of the Goods, irrespective of any contrary provisions in governing law.

(B) **"Port-to-Port Transportation"** means carriage of the Goods under this Bill of Lading other than Intermodal Transportation .

(C) **"Merchant"** includes the shipper, consignor, consignee, owner, and receiver of the Goods, and the holder of this Bill of Lading, all of whom shall be jointly and severally liable to the Carrier for the payment of all freight, demurrage, damages for detention and for the performance of the obligations of any of them under this Bill of Lading and the charter party described in the face of this Bill of Lading.

(D) **"Goods"** means the cargo described on the face of this Bill of Lading and, if the cargo is in containers supplied or furnished by or on behalf of the Merchant, include the containers as well.

(E) **"Vessel"** includes the vessel on the face of this Bill of Lading and any ship, barge, feeder vessel or other means of transport that is substituted, in whole or in part, for that vessel.

(F) **"Package"** includes containers, vans, trailers, pallets, vehicles, and similar packaged units of any description, but not Goods shipped in bulk.

## 2. CLAUSE PARAMOUNT

(A) The Hague Rules contained in the International Convention for the Unification of Certain Rules relating to Bills of Lading, dated Brussels the 25 August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply but in respect of shipments to which no such enactment is compulsorily applicable, the terms of the said convention shall apply. In trades where the international Brussels Convention 1924 as amended by the protocol signed at Brussels on February 23rd 1968-the Hague Visby rules-apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading.

(B) If this Bill of Lading covers Goods moving from ports of the United States in foreign trade, or if United States law is otherwise compulsorily applicable then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, 46 U.S.C. sec. 1300-1315 as amended (hereinafter "U.S.COGSA"), the terms of which shall be incorporated herein, and the provisions of U.S. COGSA



shall(except as otherwise provided in this Bill of Lading) govern throughout the time when the Goods are in the custody of the Carrier.

(C) All the terms provisions and conditions of the Canadian Water Carriage of Goods Act, 1936, and of the rules comprising the schedule thereto are, so far as applicable, to govern the contract contained in this Bill of Lading and the shipowners are to be entitled to the benefit of all privileges, rights and immunities contained in such Act and in the schedule thereto as if the same were herein specifically set out. If anything herein contained be inconsistent with the said provision, it shall to the extent of such inconsistency and no further, be null and void. The carrier shall be under no responsibility whatsoever for loss of or damage to Goods howsoever and wheresoever occurring when such loss or damage arises prior to the loading on and/or subsequent to the discharge from the company's ship.

## 3. LIMITATION OF LIABILITY ; DEFENSES

(A) Nothing in this Bill of Lading shall limit or deprive the Carrier of any exemption from liability, limitation of liability, or statutory protection authorized by the applicable laws, statutes, or regulations of any country.

(B) The defenses and limits of liability provided in or incorporated by this Bill of Lading, governing law and the relevant charter party shall apply in any action against the Carrier, whether the action is founded in contract, in tort, or otherwise.

## 4. SUBCONTRACTING ; EXEMPTIONS AND IMMUNITIES OF SUBCONTRACTORS

(A) "**Subcontractor**" includes stevedores, longshoremen, lighterers, terminal operators, warehousemen, truckers, agents, and any person, corporation, or other legal entity that performs any of the Ocean Carrier's obligations under this Bill of Lading, and includes the Subcontractor's own Subcontractor.

(B) The Carrier shall be entitled to subcontract on any terms the whole or any part of the handling, storage, or carriage of the Goods and any duties undertaken by the Carrier in relation to the Goods.

(C) The Merchant warrants that no claim shall be made against any of the Carrier's Subcontractors or any Subcontractor's Subcontractor, except Carriers where otherwise appropriate, that imposes or attempts to impose upon any of them or any vessel owned or operated by any of them any liability in connection with the Goods. If any such claim should nevertheless be made, the Merchant shall indemnify the Carrier against all consequences of claims by any Subcontractor against the Carrier relating to a claim by the Merchant against the Subcontractor.

(D) Without prejudice to the foregoing, in regard against a Subcontractor regarding handling, storage or carriage of the Goods, every such Subcontractor shall have the benefit of all provisions in this Bill of Lading as if such provisions were expressly for the Subcontractor's benefit.

## 5. RESPONSIBILITY FOR LOSS OR DAMAGE

(A) Insofar as this Bill of Lading is used for Port-to-Port transportation of the Goods: The Carrier shall not be liable for loss of or damage to the Goods caused before loading or after discharge of the Goods Any indication of final destination on the face of this Bill of Lading is solely for the Merchant's reference, and the



**EUKOR Car Carriers Inc.**

Carrier's responsibility for the Goods shall cease at the time of discharge of the Goods at the port of discharge. The Carrier, in making arrangements for transportation, storage, or handling before loading or after discharge, acts only as the Merchant's agent and assumes no responsibility therefor. Pre-carriage and on-carriage of the Goods are at the risk and expense of the Merchant.

(B) If the Merchant establishes that the Carrier is liable for loss of or damage to or in connection with the Goods, and subject to the provisions of this Bill of Lading, including Article 21:

    (1) With respect to loss or damage caused during the period from the time when the Goods arrived at the sea terminal at the port of loading to the time when they left the sea terminal at the port of discharge, such liability shall be governed by the applicable version of the Hague Rules (as provided in Article 2) and the Carrier shall have all exemptions from liability, limitations of liability, and protections provided therein.

    (2) Subject to subpart (1) above, with respect to loss or damage caused during the handling, storage, or carriage of the Goods by the Carrier's Subcontractor, such liability shall be to the extent to which such Subcontractor would have been liable to the Merchant if it had made a direct and separate contract with the Merchant in respect of such handling, storage, or carriage.

(C) The Carrier does not undertake that the Goods will arrive at the port of discharge or place of delivery at any particular time or in time to meet any particular market or use, and the Carrier shall not be liable for any direct or indirect loss or damage that is caused through delay.

(D) Neither the carrier nor the ship shall be responsible for any loss, damage or delay, directly or indirectly caused by or arising from strikes, lock-outs, labour disturbances, trade disputes, or anything done in contemplation of furtherance thereof whether the owners be parties thereto or not.

## 6. ROUTE OF TRANSPORT ; TRANSSHIPMENT ; FORWARDING

(A) At the Carrier's discretion and without notice to the Merchant, the Goods may be carried as a single shipment or as several shipments, by the Vessel named in this Bill of Lading or by any other means of transport by land, water, or air, whether or not owned or operated by the Carrier, and by any route, whether or not such route is the direct, advertised, or customary route.

(B) The Carrier may discharge the Goods or any part of them at any port or place for transshipment, store them afloat or ashore, and forward them by any means of transport.

(C) If the Goods cannot be found at the port of discharge or place of delivery, or if they be miscarried, when found they may be forwarded to their intended port of discharge or place of delivery, but the Carrier shall not be liable for any loss, damage, delay, or depreciation arising from such forwarding.

(D) At the Carrier's option, and without notice to the Merchant, another ship or ships may be substituted for the Vessel named in this Bill of Lading whether or not the substituted ship is owned or operated by the Carrier or arrives or departs before or after the Vessel named in this Bill of Lading.

(E) Actions the Carrier takes under this Article 6 shall be deemed to be included within the contractual carriage and such actions, or consequences resulting therefrom, shall not be considered a deviation. Should the Carrier be held liable in respect of such action, the Carrier shall be entitled to the full benefit of all limitations of liability, rights, and immunities contained in this Bill of Lading.

 *EUKOR Car Carriers Inc.*

## 7. LIBERTIES

(A) In any situation, whether or not existing or anticipated before commencement of the transport, which in the judgment of the Carrier (including but not limited to the Master and any person charged with the transport or safekeeping of the Goods) has given or is likely to give rise to danger, injury, loss, or delay to the Vessel, any person, the Goods, or any property, or has made or is likely to make it unsafe, impracticable, unlawful, or against the interest of the Carrier or the Merchant to commence the transport, to continue the transport, to discharge the Goods at the port of discharge, or to deliver the Goods at the place of delivery, the Carrier shall be entitled:

    (1) to unpack the containers or otherwise dispose of the Goods in such manner as the Carrier may consider advisable, at the risk and expense of the Merchant, and

    (2) before the Goods are loaded onto the Vessel or other means of transport, to cancel the contract of carriage without compensation and to require the Merchant to take custody of the Goods and, upon his failure to do so, to store the Goods at a place selected by the Carrier, at the risk and expense of the Merchant, and

    (3) if the Goods are at a place awaiting transshipment, to terminate the transport there and to store the Goods at a place selected by the Carrier, at the risk and expense of the Merchant, and

    (4) if the Goods are on the Vessel or other means of transport, to discharge the Goods or any part of them at a port or place selected by the Carrier, or to carry them back to the port of loading or place of receipt and there discharge them, at the risk and expense of the Merchant. After any action taken according to this subpart (A), the Carrier shall be free from any responsibility for further custody or carriage of the Goods.

(B) If after any action taken according to subpart (A) above the Carrier makes arrangements to store, transship, or forward the Goods, it shall do so only as agent for and at the risk and expense of the Merchant, without any liability in respect of such agency. The Merchant shall reimburse the Carrier forthwith upon demand for all extra freight, charges, and expenses incurred for any actions taken according to subpart (A), including delay or expense to the Vessel, and the Carrier shall have a lien upon the Goods to that extent.

(C) The situations referred to in subpart (A) above shall include, but shall not be limited to, those caused by the existence or apprehension of war, hostilities, riots, civil commotions, or other disturbances; closure of, obstacle in, or danger to any port or seaway; blockage, prohibition, or restriction on commerce or trading; quarantine, sanitary, or other similar regulations or restrictions; strikes, lockouts, or other labor troubles whether partial or general and whether or not involving employees of the Carrier or its Subcontractors; congestion of port, what sea terminal, or similar place; shortage, absence, or obstacles of labor or facilities for loading, discharge, delivery, or other handling of the Goods; epidemics or diseases; bad weather, shallow water, ice, landslip, or other obstacles to navigation or carriage.

(D) The Vessel shall have liberty to call at any port or place, whether in or out of the direct advertised, or customary route, once or more often and in any order, and to omit calling at any port or place, whether scheduled or not.

(E) The Vessel shall have liberty, either with or without the Goods on board and either before or after proceeding toward the port of discharge, to adjust compasses and other navigational instruments, make trial trips or tests, drydock whether laden or not, go to repair yards, shift berths, take on fuel or stores at any port, embark


**EUKOR Car Carriers Inc.**

or disembark any person, carry contraband, explosives, munitions, and hazardous cargo, sail without pilots, tow or be towed, and save or attempt to save life or property.

(F) The Carrier, in addition to all other liberties provided for in Article 7, shall have liberty to comply with orders, directions, regulations, or suggestions as to navigation or the carriage or handling of the Goods or the Vessel, given by any actual or purported government or public authority, or by any committee or person having under the terms of any insurance on the Vessel the right to give such order, direction, regulation, or suggestion.

(G) Actions the Carrier takes under Article 7 shall be deemed to be included within the contractual carriage and such actions, or consequences resulting therefrom, shall not be considered a deviation. Should the Carrier be held liable in respect of such action, the Carrier shall be entitled to the full benefit of all limitations of liability, rights, and immunities contained in this Bill of Lading.

## 8. DESCRIPTION OF PARTICULARS OF GOODS

Any description on the face of this Bill of Lading of marks, quality, quantity, weight, measure, nature, value, or any other particulars of the Goods is as furnished by the Merchant. The Carrier shall not be responsible for the accuracy of any such description and is not bound thereby. The Merchant warrants to the Carrier that the descriptions of particulars that he furnishes are correct, and the Merchant shall indemnify the Carrier against all loss, damage, expenses, liability, or penalties resulting from inaccuracy of any description of particulars.

## 9. DANGEROUS GOODS, CONTRABAND AND ANTI-DRUG

(A) The Carrier will carry Goods of an explosive, inflammable, radioactive, corrosive, damaging, poisonous, or dangerous nature only upon the Carrier's approval of a written application by the Merchant prior to the carriage of such Goods. Such application must accurately state the name, nature, and classification of the Goods, as well as how they are dangerous and the method of rendering them innocuous, together with the full names and addresses of the shipper and the consignee.

(B) The Merchant shall distinctly and permanently mark the nature and danger of such Goods on the outside of the package or container containing the Goods.

(C) The Merchant shall submit all documents or certificates in connection with such Goods required by any applicable statute or regulation, or by the Carrier.

(D) Whenever it is discovered that the Goods have been received by the Carrier without compliance with subparts (A), (B) or (C) above, or the Goods are found to be contraband or prohibited by any law or regulation, the Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard, discharged, or otherwise disposed of, at the Carrier's discretion and without compensation to the Merchant, and the Merchant shall be liable for and shall indemnify the Carrier against any loss, damage, or liability including loss of freight, and any other expense directly or indirectly arising out of the custody or carriage of such Goods.

(E) The Carrier may exercise the rights conferred upon it under subpart (D) whenever Goods received in compliance with subparts (A), (B), and (C) above have become dangerous, even if not dangerous when received by the Carrier.

(F) The Carrier shall not be liable for, and the Merchant shall indemnify, defend and hold the Carrier harmless

 **EUKOR Car Carriers Inc.**

from, any death of or injuries to persons or loss of or damage to the Vessel, cargo or other property which may arise from the dangerous nature of the Goods. (G) In pursuance of the provisions of the U.S.Anti Drug Abuse Act 1986, or any re-enactment thereof, the Carrier warrants that they will exercise the highest degree of care and diligence in preventing unmanifested narcotic drugs and marijuana being loaded or concealed on board the Vessel. The Merchant shall remain responsible for and indemnify the Carrier against all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of cargo or package.

## 10. STOWAGE UNDER AND ON DECK

(A) Goods stowed in poop, forecastle, deck house, shelter deck, passenger space, or any other covered-in space, or stowed in a container wherever placed, shall be deemed to be stowed under deck for all purposes including general average.

(B) Lumber, earth moving equipment, and all other Goods customarily or reasonably carried on deck may at the Carrier's option be carried on deck without notice to the Merchant and without liability of the Carrier for the risks inherent in or incident to such carriage. When such Goods are carried on deck the Carrier shall not be required to mark any statement of "on deck stowage" on the face of this Bill of Lading, any custom to the contrary notwithstanding. Such on deck carriage shall not be considered a deviation.

(C) In respect of Goods carried on deck and stated on this Bill of Lading to be so carried, all risks of loss or damage from perils inherent in or incident to the custody or carriage of such Goods on deck shall be borne by the Merchant, and in all other respects the Carrier shall have the benefit of the provisions of the applicable version of the Hague Rules(including U.S. COGSA, notwithstanding Section 1301 (C) thereof) and of the terms of this Bill of Lading.

## 11. LIVE ANIMALS AND PLANTS

With respect to the custody and carriage of live animals and plants, all risks of loss or damage from perils inherent in or incident to such carriage shall be borne by the Merchant, and in all other respects the Carrier shall have the benefit of the provisions of the applicable version of the Hague Rules (including U.S. COGSA, notwithstanding Section 1301 (c) thereof)and the terms of this Bill of Lading.

## 12. VALUABLE GOODS

The Carrier shall not be liable for loss of or damage to or in connection with precious metals or stones, chemicals, jewelry, currency, writings, negotiable instruments, securities, documents, works of art, heirlooms, or any other valuable Goods, including Goods having particular value only for the Merchant, unless the Merchant has declared the nature and value of the Goods in writing before receipt of the Goods by the Carrier, the nature and value of the Goods have been inserted on the face of this Bill of Lading, and additional freight has been paid as required

 EUKOR Car Carriers Inc.

## 13. HEAVY LIFT

(A) The weight of a single piece or package exceeding 2,240 lbs. gross must be declared by the Merchant in writing before receipt by the Carrier and must be marked clearly and durably on the outside of the piece or package.

(B) If the Merchant fails in his obligations under subpart (A): (1) the Carrier shall not be responsible for any loss of or damage to or in connection with the Goods, (2) the Merchant shall be liable for resulting loss of or damage to any person or property, and (3) the Merchant shall indemnify the Carrier against any resulting loss, damage, or liability suffered by the Carrier.

## 14. DELIVERY BY MARKS

(A) The Carrier shall not be liable for failure to deliver in accordance with marks unless such marks clearly and durably show upon the Goods, package, or container when the Goods are received by the Carrier, together with the names of the port of discharge and place of delivery.

(B) The Merchant warrants that the marks on the Goods, packages, and containers correspond to the marks shown on this Bill of Lading and also in all respects comply with all laws and regulations in force at the port of discharge or place of delivery. The Merchant shall indemnify the Carrier against all loss, damage or expenses resulting from inaccuracy or incompleteness of the marks.

(C) Goods that cannot be identified as to marks or numbers, cargo sweepings, liquid residue, and any unclaimed Goods not otherwise accounted for may be allocated for the purpose of completing delivery to the various Merchant of Goods of like character in proportion to any apparent shortage, loss of weight, or damage.

## 15. DELIVERY

(A) Loading shall take place as fast as the Vessel is able to load, by day and-if required by the Carrier-also by night, Sundays and holidays. If Goods contracted for shipment are not available, when the Vessel is ready to load, the Carrier is relieved of any obligation to load such Goods, and the Vessel may leave the port without further notice and deadfreight is to be paid. The Carrier is entitled to land and receive the Goods or to appoint a person or a corporation for the landing and reception of the Goods. Whether appointed by the Carrier or not, anybody so acting is the Merchant's representative and the Merchant shall pay current charges whether delivery is taken overside or on quay. The Merchant must be ready to take delivery of the Goods as soon as the Vessel is ready to deliver as fast as she is able to discharge, by day and-if required by the Carrier-also by night, Sundays and holidays. If the Goods are not taken by the Merchant at the time when the Vessel is entitled to call upon him to take delivery, or if they are not removed alongside the Vessel without delay, the Carrier shall be at liberty at the sole risk and expense of the Merchant to enter the Goods, to move them, to land them on to wharf, quay or into warehouse or to discharge them into craft, bulk, lighters, pack or unpack the container and/or sell them with or without legal authority, and the contract of carriage shall be considered as fulfilled.

(B) The Carrier may at its discretion deliver the Goods at any time at the Vessel's side or at a customhouse, warehouse, wharf, or any other place at the port of discharge or place of delivery shown on the face of this

 EUKOR Car Carriers Inc.

Bill of Lading.

(C) Delivery shall take place upon discharge.

(D) Delivery may be to the Merchant including his own bonded warehouses, to the Customs or other public authority, and the Carrier shall have no further responsibility for the Goods.

(E) If the Carrier for its convenience has packed the Goods into a container, the Carrier shall not be required to deliver the Goods in the container. At the Carrier's discretion, and subject to prior arrangement between the Merchant and the Carrier, the Goods may be delivered to the Merchant in the container, in which case if the container is delivered with its seal intact the Carrier's obligations under this Bill of Lading shall be discharged, and the Carrier shall not be responsible for any loss of or damage to the contents of the container.

(F) The Carrier is not responsible to notify, in writing or otherwise, the Merchant or others of the arrival, discharge, or disposition of the Goods, any custom or agreement to the contrary notwithstanding, and notwithstanding any notation on the face of this Bill of Lading that there is a notify party.

## 16. FIRE

The Carrier shall not be responsible for any loss of or damage to the Goods arising or resulting from fire, even though before loading or after discharge from the Vessel and whether founded in contract or in tort, unless caused recklessly and with knowledge that such loss would probably result by the Carrier.

## 17. GOVERNMENT ORDERS AND CONTINGENCIES

The Carrier shall have liberty to comply with any orders, directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, discharge, destination, delivery or otherwise howsoever given by any person acting or purporting to act with the authority of any government, international organization or any department thereof, or by any committee or person having, or purporting to have, under the terms of the insurance on the Vessel, the right to give such orders, directions or recommendations. If by reason of or in compliance with, any such orders, directions or recommendations the Vessel does not proceed to the port or ports originally designated, the Vessel may proceed to any other port which the Carrier or the Master of the Vessel at its discretion may select and there discharge the Goods. If in the opinion of the Carrier or the Master the performance of the transport is or threatens to be unsafe, unlawful or inadvisable by the imminence or existence of war, warlike operations or hostilities, the container may be devanned and/or the Goods may be discharged at the port of loading or at any other port or place at the Carrier's or Master's discretion. If on account of actual or threatening epidemics, quarantine, ice, strikes, lock-outs, labour troubles, interdict, congestion, difficulties in loading or discharge the Carrier or the Master at any time is in doubt as to whether the Vessel can safely and without delay or detention, reach, enter or leave the port of loading or reach or enter the port of discharge or there discharge in the usual manner, or proceed thence on the voyage safely or without delay or detention, the container may be devanned and/or the Goods may be discharged at the port of loading or at any other port or place at the Carrier or Master's discretion. In the cases referred to in all the proceeding paragraphs under this Article, the arrier may at any time postpone the carriage of any part of the Goods contracted for herein till some later date or cancel in whole or in part the contract whether before or after this Bill of Lading is issued. The discharge of the Goods and/or their delivery or other disposition pursuant to any provision of this


*EUKOR Car Carriers Inc.*

Article shall constitute complete delivery and performance under this contract and the Ocean Carrier shall be freed from any further responsibility. In the event of any diversion, delay or detention of the Vessel under such circumstances as provided in this Article and/or any services rendered to the Goods hereunder, the Carrier shall be entitled to a reasonable extra compensation and shall have a lien on the Goods for such charges.

## 18. LIEN ON GOODS

(A) The Carrier shall have a lien on the Goods, which lien shall survive delivery, for all freight, dead freight, demurrage, damages for detention, general average contributions, stevedoring charges, storage, container per diem expenses, and any other sums (including costs and attorney fees for recovering the sums) chargeable to the Merchant under this Bill of Lading, the charter party described in the face of Bill of Lading and any other preliminary contract for custody or carriage of the Goods. The Carrier may foreclose the lien by selling the Goods, without notice to the Merchant, privately or by public auction. If proceeds of the sale of the Goods fail to cover the amount due and the costs and fees incurred, the Carrier shall be entitled to recover the deficit from the Merchant.

(B) If the Goods are unclaimed for a reasonable time, or whenever in the Carrier's opinion the Goods will deteriorate or depreciate, the Carrier may at its discretion exercise its lien or sell, abandon, or otherwise dispose of such Goods at the risk and expense of the Merchant.

## 19. FREIGHT AND CHARGES

(A) Freight may be calculated on the basis of the description of particulars furnished by the Merchant, who shall be deemed to have guaranteed to the Carrier the accuracy of the contents, quantity, weight, measure, value, and other particulars as furnished at the time of receipt of the Goods by the Carrier, but the Carrier for the purpose of ascertaining the actual particulars may open the container or package at any time and at the risk and expense of the Merchant. In case of incorrect declaration of any particular, the Merchant shall be liable to the Carrier for:
    (1) the balance of freight between the freight charged and that which would have been due had the correct particular been given, plus
    (2) expenses incurred in determining the correct particular, plus
    (3) as liquidated and ascertained damages, an additional sum equal to the correct freight.

(B) Full freight to the place of delivery shall be completely earned upon loading of the Goods, whether the freight is stated or intended to be prepaid or to be collected at destination. The Carrier shall be entitled to all freight and other charges due hereunder, whether actually paid or not, and to receive and retain such freight and charges regardless whether the Vessel or the Goods be lost, or whether the Carrier takes any of the liberties allowed in this Bill of Lading. Full freight shall be paid on damaged or unsound Goods.

(C) The payment of freight and charges shall be made in full and in cash without any offset or deduction.

(D) Goods received by the Carrier cannot be taken away or disposed of by the Merchant except upon the Carrier's consent and after payment of full freight and charges due under this Bill of Lading.

(E) If the Goods are not available when the Vessel is ready to load, and unless the unavailability is caused by the failure of the Carrier to perform its obligations under this Bill of Lading, dead freight shall be paid by the

 EUKOR Car Carriers Inc.

Merchant.

(F) The Merchant shall be liable for and shall indemnify the Carrier against:

    (1) all duties, taxes, consular fees, and other charges levied on the Goods, and

    (2) all fines, damages, and losses sustained by the Carrier in connection with the Goods, including the Merchant's failure to comply with laws and regulations of any public authority in connection with the Goods, or failure to procure consular, board of health, or other certificates to accompany the Goods. The Merchant shall be liable for return freight and charges on any Goods refused exportation or importation by any public authority.

(G) If in the Carrier's opinion the Goods are in need of sorting, inspecting, mending, repairing, or reconditioning, or otherwise require protecting or caring for, the Carrier at its discretion may, by itself or through Subcontractors, and as agent for the Merchant, carry out such work at the risk and expense of the Merchant.

(H) Any party performing forwarding services with respect to the Goods shall be considered to be the agent of the Merchant exclusively, and any payment of freight or charges to such party shall not be considered to be payment to the Carrier.

(I) The Merchant shall be liable for Carrier attorney fees, expenses and costs to collect any freight or charges under Clause 19.

(J) The Merchant shall be responsible for any additional war risks premium arising from the Vessel's call at the named discharge port herein which additional premium shall constitute a charge due hereunder against the Goods pursuant to Clause 19.

## 20. NOTICE OF CLAIM AND TIME FOR SUIT AGAINST CARRIER

(A) Unless notice of loss of or damage to the Goods and the general nature of such loss or damage is given in writing to the Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods or, if the loss or damage is not apparent, within 3 days after delivery, the Goods shall be deemed to have been delivered as described on the face of this Bill of Lading.

(B) The Carrier shall be discharged from all liability in respect of the Goods, including but not limited to liability for nondelivery, misdelivery, delay, loss, or damage, unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. Suit shall not be considered to have been "brought" within the time specified unless process shall have been served on and jurisdiction obtained over the Carrier within such time.

## 21. LIMITATION OF LIABILITY FOR LOSS OR DAMAGE

(A) Subject to subpart (B) below, for the purpose of determining the extent of the Carrier's liability for loss of or damage to the Goods, the Merchant agrees that the sound value of the Goods is the Merchant's net invoice cost, plus freight and insurance premium, if paid. The Carrier shall not be liable for any loss of profit or any consequential loss.

(B) Insofar as loss of or damage to or in connection with the Goods was caused during the part of the custody or carriage to which the applicable version of the Hague Rules applies:

 **EUKOR Car Carriers Inc.**

(1) Neither the Carrier nor the Vessel shall be liable for loss or damage in an amount exceeding the minimum allowable limit per package or unit in the applicable version of the Hague Rules, which when the U.S. COGSA applies is U.S. $500 per package or, in case of Goods not shipped in packages, per customary freight unit, unless the value (and nature) of the Goods higher than this amount has been declared in writing by the Merchant before receipt of the Goods by the Carrier and inserted on the face of this Bill of Lading, and extra freight has been paid as required. If the actual value of the Goods per package or unit exceeds such declared value, the value shall nevertheless be deemed to be the declared value, and the Carrier's liability, if any, shall not exceed the declared value. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value. If the declared value has been knowingly and fraudulently misstated, the Carrier shall not be liable to pay any amount.

(2) Where the Goods have been packed into a container or unitized into a similar article of transport by or on behalf of the Merchant, it is expressly agreed that the number of such containers or similar articles of transport shall be considered to be the number of packages or units for the purpose of the application of the limitation of liability provided for in this Article 21.

## 22. GENERAL AVERAGE ; NEW JASON CLAUSE

(A) General average shall be adjusted, stated, and settled at the port of place of the Carrier's option and according to the York-Antwerp Rules, 1994 and, as to matters not provided for by those Rules, according to the laws and usages of the port of place of adjustment, and in the currency selected by the Carrier. The general average statement shall be prepared by the adjusters appointed by the Carrier. Average agreement or bond and such cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon, and any other additional securities as the Carrier may require, shall be furnished by the Merchant to the Carrier before delivery of the Goods.

(B) In the event of accident, danger, damage, or disaster before or after commencement of the voyage, resulting from any cause, whether due to negligence or not, for which or for the consequences of which the Carrier is not responsible by statute, contract, or otherwise, the Goods and the Merchant shall jointly and severally contribute with the Carrier in general average to the payment of any sacrifices, loss, or expenses of a general average nature that may be or incurred, and shall pay salvage and special charges incurred in respect of the Goods. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such salving ship belonged to strangers.

## 23. BOTH TO BLAME COLLISION

If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect, or default of the Master, crew, pilot, or agent of the Vessel or Carrier in the navigation or in the management of the Vessel, the Merchant shall indemnify the Carrier against all loss or liability incurred directly or indirectly to the other ship or her owners or operators insofar as such loss or liability represents loss of or damage to the Goods or any claim paid or payable to the Merchant by the other ship or her owners or operators and set-off, recouped, or recovered by the other ship or her owners or operators as part of their claim against the Vessel or the Carrier. The foregoing provisions shall also apply where the owners, operators, or those in charge

 EUKOR Car Carriers Inc.

of any ship or objects other than or in addition to the colliding ships or objects are at fault in respect of a collision, contact, stranding, or other accident.

## 24. CARRIAGE OF METAL PRODUCTS ; LUMBER ; VEHICLES ; BULK PRODUCTS ; COTTON

(A) The term "apparent good order and condition" when used in this Bill of Lading does not mean:

    (1) with reference to iron, steel, or metal products, that the Goods when received were free from visible rust or moisture, nicks, dents or bends;

    (2) with reference to lumber, timber, plywood, or other wood products, that the Goods when received were free from visible stains, discoloration, moisture, shakes, holes, warps, chafage, breakage, or splitting;

    (3) with reference to vehicles which included automobiles, trucks, rolling stocks, tractors, and machinery that the Goods when received were free of scratches, dents, nicks, bends, holes, or cuts;

    (4) with respect to cotton or cotton products, that when the Goods were received the covering was sufficient, untorn, or in sound condition, or that there was no damages resulting from the condition of the covering. If the Merchant so requests, a substitute Bill of Lading will be issued setting forth any notations as to the foregoing that may appear on the mate's or tally clerk's receipts or similar document.

(B) The Carrier shall not be liable for failure to deliver iron, steel, or metal products unless each piece and bundle is distinctly and durably marked and each bundle is securely fastened and tagged so that each piece and bundle can be distinguished at the port of discharge.

(C) When oil or other fluids are carried in bulk in the Vessel's tanks, they shall be pumped into and out of the Vessel at the risk and expense of the Merchant; all appliances for putting in and taking out the fluid will be provided by the Merchant; the Vessel will furnish steam for discharge, if required; and the pumping out of the Vessel's tanks shall be deedmed to be complete delivery of all oil or other fluid delivered to the Vessel. With respect to such cargo, the Carrier shall not be liable for evaporation, spillage, or other loss in weight, volume, or contents and shall be liable only for leakage shown by the Merchant to be due to negligence, fault, or failure on the part of the Carrier. In the event of any leakage or spillage of oil or other fluids the Merchant shall accept such portion thereof that has leaked or spilled from the tanks in which stowed or contained (and from any other tanks on the Vessel containing such oil or other fluids) and run into bilges, or elsewhere, as may be allotted by the Carrier, and such allot-ment shall be deemed a full settlement for any loss in weight, volume, or contents. Notwithstanding any provision in this Bill of Lading to the contrary, in the case of agreements or freight engagements for the transportation of liquid Goods in bulk,  the terms of the Bill of Lading, in addition to the terms of said agreements or said freight engagements shall govern the relations between the Carrier and the Merchant. If there is any conflict between the terms of said agreements or freight engagements and this Bill of Lading, the terms of this Bill of Lading shall govern.

## 25.  GOVERNING LAW AND JURISDICTION

The claims arising from or in connection with or relating to this Bill of Lading shall be exclusively governed by the law of Korea except otherwise provided in this Bill of Lading. Any and all action concerning custody or carriage under this Bill of Lading whether based on breach of contract, tort or otherwise shall be brought before the Seoul Civil District Court in Korea.

 *EUKOR Car Carriers Inc.*

## 26. SUPERSEDING CLAUSE

All agreement or freight engagements for the shipment of the Goods are superseded by this Bill of Lading.

## 27. SEVERABILITY OF TERMS

The terms of this Bill of Lading are severable, and if any part of terms is declared invalid or unenforceable, the validity or enforceability of any other part of term shall not be affected.

Exhibit C
Unger Affirmation



# NORTH OF ENGLAND

Search

> GO

Who We Are    What We Do    Finances    Risk Management    Publications    News    Members log-in

Overview | Premiums | Reserves and Investments | **Reinsurance**

HOME
CONTACTS
SITE MAP
LINKS
INDUSTRY NEWS
RSS FEEDS

## REINSURANCE

North of England is reinsured for claims up to US$3.05 billion through a combination of the International Group of P&I Club's pooling and excess loss programme and the Club's own retention reinsurance.

All claims up to US$50 million are shared by the 13 Group members and each Club carries a US$7 millio retention. The Group buys reinsurance cover at Lloyd's for claims between US$50 million and US$2.05 billion, after which costs fall back on the pool.

INTERNATIONAL GROUP REINSURANCE STRUCTURE 2007/2008

| | | | |
|---|---|---|---|
| Overspill | | Liability (shared by pool) | 5,250 (approx) |
| Collective Overspill | 1000 | One reinstatement | 3,050 |
| Layer 3 | 1000 | Unlimited reinstatements | 2,050 |
| Layer 2 | 500 | Unlimited reinstatements | 1,050 |
| Layer 1 | 500 | 75% Unlimited reinstatements / 25% Co-insurance | 550 |
| Upper Pool | 20 | | 50 |
| Lower Pool | 23 | | 30 |
| Club retention | 7 | | 7 |

US$ m (from the ground up)



TANKERS (DIRTY)
TANKERS (CLEAN)
DRY CARGO
PASSENGERS

Rates from 2003/04 include War P&I

Rates from 2004/05 "as if" pool limit US$30 million

North of England reinsures its retention as well its share of pool contributions with AA rated Swiss Re, providing maximum protection to members.

There is also a 'quota share' reinsurance contract with North of England Mutual Insurance Association (Bermuda) Limited, a company wholly owned by members, which allows 90% of the Club's risks to be reinsured through Bermuda. The combined figures of the two Clubs form the basis of the Club's return to the UK Financial Services Authority.

For further information, please contact a member of the finance team.



International Group of P&I Clubs

**Home**   About   Contact   Links   The Group Clubs   The Group Agreements   News and Information   Submissions   EU Online Po

## Welcome to the International Group of P&I Clubs

The thirteen principal underwriting member clubs of the International Group of P&I Clubs ("the Group") between them provide liability cover (protection and indemnity) for approximately 90% of the world's ocean-going tonnage.

Each Group club is an independent, non-profit making mutual insurance association, providing cover for its shipowner and charterer members against third party liabilities relating to the use and operation of ships. Each club is controlled by its members through a board of directors or committee elected from the membership.

Clubs cover a wide range of liabilities including personal injury to crew, passengers and others on board, cargo loss and damage, oil pollution, wreck removal and dock damage. Clubs also provide a wide range of services to their members on claims, legal issues and loss prevention, and often play a leading role in the management of casualties.

Lates

**Nove**
EU In
Visit,

**Nove**
Shan
Focus
Prote

**Octol**
Joint
signir



International Group of P&I Clubs

Home   About   Contact   Links   **The Group Clubs**   The Group Agreements   News and Information   Submissions   EU Online P...

Sub-committees

For a list of permanent sub-committees, please click **here**.

Latest

**November 2007 »**
EU Intergroup on Sustainable Development - Ship Visit, Antwerp

**November 2007 »**
Shanghai International Maritime Forum – "Global Focus on Oil Transportation and Marine Environment Protection"

**October 2007 »**
Joint IG/ITOPF/NOAA workshop in Washington and signing of new IG/NOAA MoU

Contact Us

## The Group Clubs

There are thirteen separate and independent principal clubs in the Group, plus their affiliated associatio...

Please see the links to their web sites below:

- American Steamship Owners Mutual Protection and Indemnity Association, Inc
- Assuranceforeningen Gard
- Assuranceforeningen Skuld
- The Britannia Steam Ship Insurance Association Limited
- The Japan Ship Owners' Mutual Protection & Indemnity Association
- The London Steam-Ship Owners' Mutual Insurance Association Limited
- The North of England Protection & Indemnity Association
- The Shipowners' Mutual Protection & Indemnity Association (Luxembourg)
- The Standard Steamship Owners' Protection & Indemnity Association (Bermuda) Limited
- The Steamship Mutual Underwriting Association (Bermuda) Limited
- The Swedish Club
- United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Limited
- The West of England Ship Owners Mutual Insurance Association (Luxembourg)

Exhibit D
Unger Affirmation

## UNGER, MICHAEL E.

**From:**        UNGER, MICHAEL E.
**Sent:**        Friday, December 14, 2007 1:55 PM
**To:**          'mhardison@evw.com'
**Subject:**     RE: Kia Motors v. Engaged Future and Eukor Car Carriers

**Attachments:**   NYDOCS1-#295482-v1-draft_LOU.DOC


Mike,

Further to our telcon a short time ago, attached is a revised LOU which I am now authorized to formally offer on behalf of Eukor and NEPIA as substitute security for the funds which have been restrained under your Rule B. Please confirm the same is acceptable and the funds will be released from restraint.  The funds should be returned to Eukor rather than released to the beneficiary listed in the wire details.

Regards,
Mike Unger
Freehill Hogan & Mahar, LLP
80 Pine Street
New York, NY 10005-1759
Tel:  (212) 425-1900
Fax: (212) 425-1901
Cell: (516) 857-0535



NYDOCS1-#295482
-v1-draft_LOU.D...

1

Kia Motors Corporation
Kia Motors America Inc.
Hyundai Marine & Fire Insurance Co. Ltd.
c/o Eaton & Van Winkle LLP
3 Park Avenue
New York, New York 10016-2078

VESSEL:        M/V MORNING IVY
BILL OF LADING: Sea Waybills EUKOKRUS 26433W, 26432W, 264634, 264571W
               dated July 13, 2006 and 264568W, 264570W, 264567W, 264572W,
               264569W dated July 16, 2006
CLAIM:         Claim for damage to Kia Automobiles

Dear Sirs,

In consideration of your releasing the funds restrained pursuant to the Rule B attachment obtained by you against EUKOR CAR CARRIERS INC. in the action filed in the United States District Court for the Southern District of New York captioned "Kia Motors Corporation, et. al v. Engaged Future and Eukor Car Carriers Inc. 07 Civ. 11063 (GBD)" and refraining from taking action resulting in the arrest of the Vessel or any other ship, property or asset in the ownership, associated ownership, management, possession or control of EUKOR CAR CARRIERS INC. for the purpose of founding jurisdiction and/or obtaining security in respect of the above Claim, we, NORTH OF ENGLAND P&I ASSOCIATION LIMITED, hereby undertake to pay to you within 14 days of your first written demand such sums as may be agreed in writing as a result of an amicable settlement between EUKOR CAR CARRIERS INC. and you; or as may be adjudged by a final unappealable judgement of a Court of competent jurisdiction to be due to you in respect of the Claim, provided that the total sum of our liability hereunder shall not in any circumstances exceed US$ 519,062.80 (United States Dollars FiveHundred Nineteen Thousand sixty two and eighty cents) inclusive of interest and costs.

NYDOCS1/295482.1

This letter of undertaking shall remain valid until such time as it is returned to us for cancellation, or until the above claim is concluded, whichever is the earlier.

This letter of undertaking is not to be considered an admission of liability and is written entirely without prejudice to any rights, defences, immunities or limitations which EUKOR CAR CARRIERS INC. may have, including but not limited to a challenge to the application of U.S. law and jurisdiction and venue of the Southern District of New York (excluding any suit brought in said court exclusively for the purpose of obtaining security) pursuant to the terms of the law and jurisdiction and forum selection clauses contained in the Sea Waybills and Bills of Lading, limitation of liability, etc., none of which defenses are regarded as waived.

This undertaking shall be governed by and construed in accordance with English law and subject to the exclusive jurisdiction of the English Courts.

It is understood and agreed that should the parties reach agreement or a court of competent jurisdiction issues an Order and/or Judgment reducing the amount of the security provided under this letter, said security will be reduced in accordance with such agreement or court order.

It is understood and agreed that the signing of this letter by Michael E. Unger shall not be construed as binding upon him personally, nor binding upon Freehill, Hogan & Mahar, LLP, but is binding only upon the NORTH OF ENGLAND P&I ASSOCIATION LIMITED.

Very truly yours,

NORTH OF ENGLAND P&I ASSOCIATION
LIMITED

By:_____

Michael E. Unger

As Attorney-In-Fact for the above –limited
Purpose only as per written authority from
North Insurance Management Ltd., as Managers
On behalf of the North of England P&I
Association Ltd.

**UNGER, MICHAEL E.**

| | |
|---|---|
| **From:** | UNGER, MICHAEL E. |
| **Sent:** | Friday, December 14, 2007 1:55 PM |
| **To:** | 'mhardison@evw.com' |
| **Subject:** | RE: Kia Motors v. Engaged Future and Eukor Car Carriers |

**Attachments:** NYDOCS1-#295482-v1-draft_LOU.DOC

Mike,

Further to our telcon a short time ago, attached is a revised LOU which I am now authorized to formally offer on behalf of Eukor and NEPIA as substitute security for the funds which have been restrained under your Rule B. Please confirm the same is acceptable and the funds will be released from restraint. The funds should be returned to Eukor rather than released to the beneficiary listed in the wire details.

Regards,
Mike Unger
Freehill Hogan & Mahar, LLP
80 Pine Street
New York, NY 10005-1759
Tel: (212) 425-1900
Fax: (212) 425-1901
Cell: (516) 857-0535



NYDOCS1-#295482
-v1-draft_LOU.D...

1

Kia Motors Corporation
Kia Motors America Inc.
Hyundai Marine & Fire Insurance Co. Ltd.
c/o Eaton & Van Winkle LLP
3 Park Avenue
New York, New York 10016-2078

VESSEL:         M/V MORNING IVY
BILL OF LADING: Sea Waybills EUKOKRUS 26433W, 26432W, 264634, 264571W
                dated July 13, 2006 and 264568W, 264570W, 264567W, 264572W,
                264569W dated July 16, 2006
CLAIM:          Claim for damage to Kia Automobiles

Dear Sirs,

      In consideration of your releasing the funds restrained pursuant to the Rule B

attachment obtained by you against EUKOR CAR CARRIERS INC. in the action filed in

the United States District Court for the Southern District of New York captioned "Kia

Motors Corporation, et. al v. Engaged Future and Eukor Car Carriers Inc. 07 Civ. 11063

(GBD)" and refraining from taking action resulting in the arrest of the Vessel or any

other ship, property or asset in the ownership, associated ownership, management,

possession or control of EUKOR CAR CARRIERS INC. for the purpose of founding

jurisdiction and/or obtaining security in respect of the above Claim, we, NORTH OF

ENGLAND P&I ASSOCIATION LIMITED, hereby undertake to pay to you within 14

days of your first written demand such sums as may be agreed in writing as a result of an

amicable settlement between EUKOR CAR CARRIERS INC. and you; or as may be

adjudged by a final unappealable judgement of a Court of competent jurisdiction to be

due to you in respect of the Claim, provided that the total sum of our liability hereunder

shall not in any circumstances exceed US$ 519,062.80 (United States Dollars

FiveHundred Nineteen Thousand sixty two and eighty cents) inclusive of interest and

costs.

NYDOCS1/295482.1

This letter of undertaking shall remain valid until such time as it is returned to us for cancellation, or until the above claim is concluded, whichever is the earlier.

This letter of undertaking is not to be considered an admission of liability and is written entirely without prejudice to any rights, defences, immunities or limitations which EUKOR CAR CARRIERS INC. may have, including but not limited to a challenge to the application of U.S. law and jurisdiction and venue of the Southern District of New York (excluding any suit brought in said court exclusively for the purpose of obtaining security) pursuant to the terms of the law and jurisdiction and forum selection clauses contained in the Sea Waybills and Bills of Lading, limitation of liability, etc., none of which defenses are regarded as waived.

This undertaking shall be governed by and construed in accordance with English law and subject to the exclusive jurisdiction of the English Courts.

It is understood and agreed that should the parties reach agreement or a court of competent jurisdiction issues an Order and/or Judgment reducing the amount of the security provided under this letter, said security will be reduced in accordance with such agreement or court order.

It is understood and agreed that the signing of this letter by Michael E. Unger shall not be construed as binding upon him personally, nor binding upon Freehill, Hogan & Mahar, LLP, but is binding only upon the NORTH OF ENGLAND P&I ASSOCIATION LIMITED.

Very truly yours,

NORTH OF ENGLAND P&I ASSOCIATION LIMITED

By:_____

Michael E. Unger

As Attorney-In-Fact for the above –limited
Purpose only as per written authority from
North Insurance Management Ltd., as Managers
On behalf of the North of England P&I
Association Ltd.